**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Treestump Woodcraft, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>The City of South Tucson, *et al.*,<br><br>Defendants. | No. CV-14-02386-TUC-RM (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court are Defendant City of South Tucson and its Officers' Motion for Summary Judgment (Doc. 72) and Defendants Yolanda Loya, Joseph Mason and Fernando Loya's Motion for Partial Summary Judgment (Doc. 74). Plaintiffs have filed a single Response (Doc. 88) to both motions, and Defendants have replied (Docs. 91 & 93).

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Macdonald for Report and Recommendation.   Oral argument was held on December 16, 2015, and the matter taken under advisement. Minute Entry 12/16/2015 (Doc. 100).  The Magistrate Judge recommends that the District Court grant both motions (Docs. 72 & 74).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    FACTUAL BACKGROUND[1]

## A.    *The Initial Investigation*

On March 14, 2013, City of South Tucson Police ("STPD") Officer Paul South was on patrol.  Defs.' SOF (Doc. 73), STPD Case No. 1303140019 Case Summary Rpt. (Exh. "A") at 3.  At approximately 5:30 p.m., Officer South smelled a strong odor of raw marijuana in the area of West 35th Street, Tucson, Arizona.  *Id.*  The smell was so powerful, that Officer South could smell it from inside of his vehicle.  *Id.*  Officer South stopped his vehicle and walked around the area, determining that the odor seemed to be coming from a row of four storage buildings.  *Id.*  Officer South contacted officers with the Tucson Police Department's ("TPD") Bravo unit, who specialize in drug interdiction. *Id.*

TPD officers responded and detected the same strong odor.  Defs.' SOF (Doc. 73), Exh. "A" at 3.  TPD officers informed Officer South that they were getting a search warrant.  *Id.*; *see also* Defs.' SOF (Doc. 73), TPD Case No. 1303140621 Incident Rpt. (Exh. "B") at 4.  The initial warrant was to search 18 West 35th Street, Tucson, Arizona. Defs.' SOF (Doc. 73), Exh. "A" at 3, Exh. "B" at 4.  Officers searched the 18 West 35th Street building, but did not find any marijuana.  *Id.*  Accordingly, the search warrant was amended to include 20 West 35th Street.  *Id.*

---

[1] The facts are undisputed for the most part.  As such, the factual background outlines Defendant City of Tucson and its officers' statement of facts, to which Defendants Loya and Mason have joined, and noted where Plaintiffs have objected or added further information. "Facts" presented by the parties, but not relevant to the pending motions have not been included.

After entering the 20 West 35th Street building, a large marijuana growing operation was discovered. *Id.* There were several Marijuana plants in various stages of growth in different rooms throughout the building.[2] Defs.' SOF (Doc. 73), Exh. "A" at 3. The TPD officers seized the marijuana and other property. Defs.' SOF (Doc. 73), Exh. "B" at 4; *see also* Def. City of South Tucson and its officers' Suppl. to SOF, Exh. "C" (Doc. 81) (hereinafter Defs.' SOF, Exh. "C"). TPD confiscated 356 marijuana plants, lights, a forklift, a vehicle, and $18,000.00 in currency. Defs.' SOF (Doc. 73), Exh. "A" at 3. TPD was able to identify Ron Sisco and Kari Turner as residents of the property based on documents found therein. *Id.*

**B.     The Property**

Plaintiff Ron Sisco rented the 20 West 35th Street from Yolanda Loya and Joseph Mason. Defs.' SOF (Doc. 73), Ronald Sisco Depo. 4/8/2015 (Exh. "D") at 20:1–21:1. At the time of the incident, Plaintiff Ron Sisco rented the building on a month-to-month basis.[3] *Id.* The 20 West 35th Street building is one of four identical buildings constructed next to one another. Defs.' SOF (Doc. 73), Fernando Loya Depo. 7/7/2015 (Exh. "E") at 10:11–11:13, Yolanda Loya Depo. 7/10/2015 (Exh. "F") at 18:1–6. Yolanda Loya and her husband Joseph Mason own one of buildings and use it as a rental

---

[2] Plaintiffs object asserting relevance, unfair prejudice, misleading the jury, and inadmissible character evidence, and citing Rules 401-404, Federal Rules of Evidence. Defendants' SOF describes "hundreds" of marijuana plants, whereas the actual police report only states several. Beyond this correction, Plaintiffs' objections are without merit or otherwise inapplicable.

[3] Plaintiffs object asserting that Plaintiff Ronald Sisco signed a one-year lease in 2009 with Fernando and Carmen Loya named as landlords, and that after the lease term expired, it became a month to month tenancy by default. Plaintiffs' objection is irrelevant. There is no dispute that at the time of the incident giving rise to this lawsuit, Ron Sisco rented the property on a month-to-month basis.

property.  Defs.' SOF (Doc. 73), Exh. "F" at 10:9–24, 15:3–16.  Each building has a commercial warehouse in the front portion and a residential quarter in the back half of the building.  Defs.' SOF (Doc. 73), Exh. "E" at 10:11–24, 29:11–25.

### C.     The Property Owner

On March 16, 2013, Officer South spoke with TPD Sergeant Crowell.  Defs.' SOF (Doc. 73), Exh. "A" at 3.  Sergeant Crowell informed Officer South that the property owners were a Federal Bureau of Investigations ("FBI") agent and a retired Border Patrol Agent out of San Diego, California, whom he had contacted.  *Id.*  That same day, Officer South was on patrol in the area and passed by the property at 20 West 35th Street.  *Id.*  Officer South saw someone there, and stopped to investigate.  *Id.*

The individual identified herself as the property owner, Yolanda Loya.  Defs.' SOF (Doc. 73), Exh. "F" at 23:2–24:8.  Yolanda Loya testified at deposition that Officer South initially treated her as a suspect.  *Id.*  When she initially met Officer South, she requested that he call his watch commander.  *Id.*, Exh. "F" at 53:16–54:17.  Officer South's commander responded, and Yolanda Loya informed them that she was the property owner, and there to secure the building.  *Id.*, Exh. "F" at 23:6–25:15.  Yolanda Loya asked her brother Fernando Loya to secure the property and hired a demolition company to remove the wet soil and grow boxes from inside the warehouse.  *Id.*

Yolanda Loya described the interior of the property as having been "trashed."  Defs.' SOF (Doc. 73), Exh. "F" at 25:16–26:12.  Walls had been broken down, wires were hanging everywhere, and there was wet soil and trash throughout the building.  *Id.*,

- 4 -

Exh. "F" at 24:9–25:15.  Yolanda felt her investment in the building had been destroyed. *Id.*

The following day, Yolanda Loya traveled to Mexico to visit a sick relative. Defs.' SOF, Exh. "F" at 56:19–57:22.  After spending the night in Mexico, she contacted Ron's parents Ronald and Christine Sisco, who live in Tumacacori, Arizona.[4]  *Id.*, Exh. "F" at 29:15–30:18, 56:19–57:22.  Plaintiffs Ronald and Christine Sisco allege that Yolanda informed them that she was an agent with the Federal Bureau of Investigations ("FBI").[5]  Plaintiffs Ronald and Christine Sisco further allege that Yolanda brought up her position as an FBI agent "often" during the course of their conversation, as well as mentioning that her husband was a retired federal law enforcement agent.[6]  Yolanda testified that she told Ron's parents that they could have access to the property and obtain their equipment so long as they had Ron sign a statement saying that they had permission to remove the property from the warehouse.[7]  *Id.*, Exh. "F" at 32:6–34:13.  Ron's parents

---

[4] Plaintiffs assert that Yolanda Loya visited their house in Tumacacori on March 15, 2013, not March 17, 2013; however, they offer no evidence to support this contention. Defendants Loya and Mason point out that even taking Plaintiffs' version as true, these facts are not material to the motion for summary judgment.  The Court agrees with this contention.

[5] Plaintiffs failed to attach the relevant portions of Ronald Sisco's deposition testimony to their Separate Statement of Facts.  As such, the Court has no way to evaluate the accuracy of this statement.  For purposes of the pending motions, however, the Court will accept this statement as true.

[6] Plaintiffs failed to attach the relevant portions of Ronald Sisco's deposition testimony to their Separate Statement of Facts.  As such, the Court has no way to evaluate the accuracy of this statement.  For purposes of the pending motions, however, the Court will accept this statement as true.

[7] Plaintiffs dispute that this was ever told to Ronald and Christine Sisco, and although they cited their depositions, they did not attach them as exhibits.  As such, the Court has no way to evaluate the accuracy of the objection.  Defendants Loya and Mason point out that even taking Plaintiffs' version as true, these facts are not material to the motion for summary judgment.  The Court agrees with this contention.

1  told Yolanda that they would have Ron sign a statement, and meet her on the following

2  Monday, March 18, 2013.[8]  *Id.*  On Monday, Ron's parents called Yolanda, and told her

3
4  that they could not obtain a statement.[9]  *Id.*, Exh. "F" at 36:8–24.  Yolanda Loya returned

5  to San Diego, California the same day.  *Id.*

6      On March 18, 2013, Joseph Mason e-mailed Treestump stating that he was

7
8  retaining the personal property in accordance with the Landlord/Tenant Act, and provided

9  his telephone number and an e-mail address at which he could be contacted to retrieve the

10 property.  Defs.' SOF (Doc. 73), Mason e-mail 3/18/2013 (Exh. "N").  Christine Sisco

11 did not respond to this e-mail until April 3, 2013.  *Id.*, Exh. "N."

12
13     **D.    *Ron's Initial Attempts to Access the Property***

14     On March 21, 2013, Plaintiff Ron Sisco turned himself in to TPD.  Defs.' SOF

15 (Doc. 73), Ron Sisco Depo. 4/8/2015 (Exh. "D") at 39:1–11, 41:7–18.  After Ron was

16
17 charged, he was released.  *Id.*, Exh. "D" at 41:7–18.  Ron returned to the property at 20

18 West 35th Street at approximately 10:00 p.m. the same evening.  *Id.*, Exh. "D" at 41:7–

19 44:4.  Ron testified that he noticed that his lock to the front gate had been cut and

20
21 replaced with another lock.  *Id.*, Exh. "D" at 43:2–44:4.  Ron further testified that he

22 climbed over the fence, went under the garage door, and gained access to the building.

23
24     [8] Plaintiffs dispute that they said this to Yolanda Loya, and although they cited their depositions, they did not attach them as exhibits.  As such, the Court has no way to evaluate the accuracy of the objection.  Defendants Loya and Mason point out that even taking Plaintiffs' version as true, these facts are not material to the motion for summary judgment.  The Court agrees with this contention.

25
26     [9] Plaintiffs dispute that this occurred, and although they cited their depositions, these were not attached as exhibits.  As such, the Court has no way to evaluate the accuracy of the objection.  Defendants Loya and Mason point out that even taking Plaintiffs' version as true, these facts are not material to the motion for summary judgment.  The Court agrees with this contention.

27
28

1
2
3
4

*Id.*, Exh. "D" at 43:2–45:10.  Ron noticed that most of his and Kari's personal property was missing.  Defs.' SOF (Doc. 73), Exh. "D" at 44:24–47:22.  Missing property included an expensive ring, musical instruments, and numerous household goods.[10]

5
6
7
8
9
10
11
12
13
14

The following day, March 22, 2013, Ron called STPD saying that he had a lease on the 20 West 35th Street property, and that his landlord had locked him out.  Defs.' SOF (Doc. 73), Call ID R130810012 Calls for Service Rpt. (Exh. "L").  Ron stated that he wanted to cut the lock off and requested an officer before doing so.  *Id.*, Exh. "L." STPD responded to the call as a civil matter.  *Id.*  Officer Cajas's report states that he advised Ron "that he could not cut the lock on the gate and the police could only preserve the peace."  *Id.*  Officer Cajas further instructed Ron to contact his landlord or contact the landlord/tenant section of Pima County.  *Id.*

15
16
17
18
19
20
21
22
23
24
25

Later the same evening, Officer Winston responded to a reported burglary at the property.  Defs.' SOF (Doc. 73), Case Number 1303220031 Case Summ. Rpt. (Exh. "I").  At the property, Officer Winston made contact with Fernando Loya.  *Id.*, Exh. "I" at 2. Fernando Loya stated that "Ronald Sisco had recently been arrested for cultivating marijuana on the property . . . and had been released from the Pima County Jail."  *Id.*, Exh. "I" at 2.  Fernando Loya also stated that he had changed the locks on the property and begun the eviction process.  *Id.*, Exh. "I" at 2.  Fernando said that his attempts to contact Ron Sisco had been unsuccessful.  *Id.*, Exh. "I" at 2.  Fernando Loya wanted to

26
27
28

---

[10] The parties agree on this statement; however, Defendants' citation to Ron Sisco's deposition testimony is inaccurate.

report a burglary, but was unaware of what items belonging to Ron Sisco were missing. *Id.*, Exh. "I" at 2.

Officer Winston spoke to a supervisor regarding the earlier call that day from Ron Sisco regarding the changing of the locks and alleged taking of his property. Defs.' SOF (Doc. 73), Exh. "I" at 2. The officers determined that this was a civil dispute and took no further action. *Id.*, Exh. "I" at 2. Officer Winston advised Fernando Loya to pursue the process of eviction through the civil court and have service made on Ron Sisco. *Id.*, Exh. "I" at 2. Officer Winston unsuccessfully attempted to contact Ron Sisco. *Id.*, Exh. "I" at 2.

After contacting STPD, Ron Sisco contacted the Pima County Attorney's Office ("PCAO") on March 22, 2013. Defs.' SOF (Doc. 73), Ron Sisco Depo. 4/8/2015 (Exh. "D") at 57:20–58:15. Ron spoke with a detective from the PCAO who advised him to seek legal counsel. *Id.*, Exh. "D" at 58:2–59:17. Ron told the detective that he had to deal with rental properties previously, and knew that in order to evict someone there needed to be a court order. *Id.* The detective responded that he didn't know. *Id.*

### E.    *Later Attempts to Access the Property*

On March 24, 2013, Ron returned to the 20 West 35th Street property, cut the lock on the front gate, and replaced it with his own lock. Defs.' SOF (Doc. 73), Exh. "D" at 59:18–60:4. Ron took a washer, dryer, lathe, bed, compressor, and some woodworking tools. *Id.*, Exh. "D" at 60:9–19. Ron also took photographs. *Id.*, Exh. "D" at 71:10–17.

At approximately 6:00 p.m. on March 25, 2013, Kari Turner returned to the property and was planning on meeting Ron. Defs.' SOF (Doc. 73), Turner Depo.

4/9/2015 (Exh. "H") 55:24–56:11.     Kari testified that Fernando Loya drove up

proclaiming to be the landlord, and asking her, "Who the hell are you?"  *Id.*, Exh. "H" at

55:24–57:1.  Kari further testified that she had never seen Fernando Loya before, and that

he was combative and barring her from accessing the property.  *Id.*  Kari called STPD.

Defs.' SOF (Doc. 73), Call ID R130840016, Calls for Service Report 3/25/2013 (Exh.

"M").  The incident was dispatched as a fight brewing.  *Id.*  Ron arrived at the property

while Kari was waiting for STPD.  Defs.' SOF (Doc. 73) Sisco Depo. 4/8/2015 (Exh.

"D") at 72:16–79:19.   Ron Sisco testified that when Sergeant Masters arrived, he

approached Fernando Loya, and when Kari attempted to tell the Sergeant that she was the

one who had called, he said "Shut up.  I'll get to you in a minute."  *Id.*  Kari testified that

she recalls Sergeant Masters telling her to get an attorney involved, that it was "lawyer

games now," and that she needed to leave or she would be arrested for trespassing.

Defs.' SOF (Doc. 73), Turner Depo 4/9/2015 (Exh. "H") 56:20–58:1.

      Ron confronted Fernando Loya and told him that he had stolen all of his stuff and

that he wanted his deposit back.  Defs.' SOF (Doc. 73), Exh. "D" at 73:5–15.  Ron stated

that Fernando said, "I'll see you around, Sisco" and made a threatening remark.  *Id.*

Fernando was yelling and angry, and did not want Ron and Kari at the property.  *Id.*, Exh.

"D" at 78:2–25.  Ron felt like Fernando wanted to punch him in the face.  *Id.*  Another

officer told Fernando to "back off."  *Id.*  Ron alleges that Sergeant Masters told him to

leave, and threatened him with arrest if he did not comply.  Defs.' SOF (Doc. 73), Exh.

"D" at 79:11–19.

  . . .

1

2

3

### F.      Later Proceedings

The landlords obtained a writ of restitution effective April 1, 2013.  Defs.' SOF,

Mason Depo. 7/10/2015 (Exh. "G") 8:3–13.  After the writ of restitution was issued, the

parties agreed through their attorneys that they could pick up any remaining property on

April 6, 2013.  *Id.*, Exh. "G" at 20:15–22:5.  On April 6, 2013, STPD was called to the

property because Ron and Kari felt that Fernando was combative and refusing them

access to their personal property.  Defs.' SOF (Doc. 73), STPD Case No. 1304060015

Case Summ. Rpt. (Exh. "J").  Fernando claimed that Ron and Kari did not have the

agreed upon storage fees and/or did not have the keys to the building, but he would allow

them to take the wood from the yard.  *Id.*, Exh. "J" at 3.  Sisco was informed that this was

a civil matter.  *Id.* at 3–4.

On April 8, 2013, Christine Sisco and Ron contacted STPD to report the personal

property as stolen.  Defs.' SOF (Doc. 73), STPD Case No. 1304080011 Case Summ. Rpt.

(Exh. "K") at 3.  Defendants assert that no further efforts were made by any of the

plaintiffs to retrieve their property, citing Ron Sisco's deposition.  Plaintiffs object,

because the deposition does not reflect this.  The Court agrees with Plaintiffs.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most

favorable to the nonmoving party, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255,

106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), "there is no genuine issue as to any

material fact and [] the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id*. In order to withstand a motion for summary judgment, the nonmoving party must show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Moreover, a "mere scintilla of evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The United States Supreme Court also recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

III. **ANALYSIS**

Defendants City of South Tucson and its Officers seek summary judgment because their actions are qualifiedly immune or otherwise non-actionable in light of municipal status. *See* Defs.' Mot. for Summ. J. (Doc. 72). Defendants Loya and Mason seek partial summary judgment because they are not state actors for purposes of § 1983. *See*. Defs.' Mot. for Partial Summ. J. (Doc. 72).

. . .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.      Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, —, 131 S.Ct. 2074, 2080, 179 L.Ed.2d (2011) (citations omitted); *see also Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (internal quotation omitted). These prongs may be addressed in any order, depending on the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d (2009). In its analysis, the Court must view the facts "in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) (citations omitted).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at —, 131 S.Ct. at 2083 (quoting *Anderson v. Creighton*, 493 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (alterations in original). The Supreme Court of the United States has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *City and County of San Francisco, Calif. v. Sheehan*, — U.S. —, 135 S.Ct. 1765, 1774, 191

L.Ed.2d 856 (2015) (quoting *al-Kidd*, 563 U.S. at —, 131 S.Ct. at 2084).  Although the

Supreme Court of the United States does "not require a case directly on point before

concluding that the law is clearly established, . . . existing precedent must have placed the

statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at —, 131 S.Ct. at

2083.  "Qualified immunity is no immunity at all if 'clearly established' law can simply

be defined as the right to be free from unreasonable searches and seizures."  *Sheehan*, —

U.S. at —, 135 S.Ct. at 1776.  As such, qualified immunity "provides ample protection to

all but the plainly incompetent or those who knowingly violate the law."  *Malley v.*

*Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

## 1. The Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S.

Const. amend. IV.  Plaintiffs allege that the City of South Tucson and its officers violated

their Fourth Amendment rights by interfering with the possessory interest in the 20 West

35th Street property and personalty contained therein.  Pls.' Response (Doc. 88) at 5.

Defendants City of South Tucson and its officers assert that the officers are entitled to

qualified immunity, because they did not violate Plaintiffs' constitutional rights and even

if such a violation occurred, such right was not clearly established.[11]  Defs. City of S.

Tucson and its Officers' Mot. for Summ. J. (Doc. 72) at 11–14; *see also* Defs. City of S.

Tucson and its Officers' Amended Reply (Doc. 91).

---

[11] For purposes of the discussion regarding qualified immunity, the Court is addressing its
application to the STPD officers.  The potential liability of the City of South Tucson is addressed
in Section III.B., *infra*.

It is undisputed that after the March 14, 2013 incident where TPD officers obtained a warrant, entered the 20 West 35th Street property, and seized marijuana and other property contained therein and prior to Ron Sisco's return to the property on the evening of March 21, 2013, Fernando Loya changed the locks on the property. *See* Defs.' SOF (Doc. 73), Exhs. "B," "C," "D" at 43:2–47:22, & "I" at 2. It is also undisputed that City of *Tucson* police officers, not City of South Tucson officers, obtained and executed the search warrant for the 20 West 35th Street property. Defs.' SOF at Exhs. "B" & "C." As such, the STPD defendants cannot be responsible for any alleged Fourth Amendment violation arising from the initial search and seizure of the property or personalty.

Plaintiffs further assert that STPD officers "meaningfully interfered" with their possessory interest in the property. Pls.' Response (Doc. 88) at 6–7. In support of this contention, Plaintiffs point to Officer Cajas's March 22, 2013 admonition that Ron Sisco could not cut the lock on the 20 West 35th Street property and that the police do not intervene in civil disputes as evidence of STPD's interference with Plaintiffs' property rights. *See* Defs.' SOF (Doc. 73), Exh. "L." Officer Cajas further instructed Ron to contact his landlord or contact the landlord/tenant section of Pima County. *See id.* Plaintiffs additionally claim that Officer Winston's advice later that same date to Fernando Loya to pursue the process of eviction through the civil court with service on Ron Sisco constituted "meaningful interference" with Plaintiffs rights. *See* Pls.' Response (Doc. 88) at 6. Lastly, Plaintiffs assert that Sergeant Masters's appearance at

the property on March 25, 2013 and threat to arrest Kari for trespassing if she did not leave interfered with their possessory interest in the property.

Plaintiffs rely on *Soldal v. Cook County, Ill.*, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), to support their argument for a Fourth Amendment violation. In *Soldal*, the Supreme Court of the United States considered "whether the seizure and removal of the Soldals' trailer home implicated their Fourth Amendment rights." *Soldal*, 506 U.S. at 60, 121 S.Ct. at 543. The police officer in *Soldal* were present during the removal of plaintiffs mobile home including the disconnection of sewer, water, and phone, removal of the trailer's canopy and skirting, and removal of the mobile home from the property, and informed plaintiff that his role was "to see that [Soldal] didn't interfere with [Willoway's] work." *Id.* at 58, 113 S.Ct. at 541 (alterations in original). Additional officers arrived and stood by while the landlord's workers "pulled the trailer free of its moorings and towed it onto the street." *Id.* at 59, 113 S.Ct. at 542.

The Ninth Circuit Court of Appeals has concluded that "there may be a deprivation within the meaning of s 1983 not only when there has been an actual 'taking' of property by a police officer, but also when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession." *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981). In the instant case, it is undisputed that Fernando Loya changed the locks on the property. STPD officers were not present or involved with the changing of the locks or removal of Plaintiffs property. Furthermore, STPD officers were not asked to "stand by," but rather arrived at the 20 West 35th Street

- 15 -

property on multiple occasions at the behest of both parties while embroiled in a dispute. *See Meyers v. Redwood City*, 400 F.3d 765 (9th Cir. 2005) (officers "summoned to a scene not of their making[,]" with conflicting stories about the events surrounding a vehicle repossession did not violate plaintiff's clearly established rights). This matter is factually distinguishable from *Soldal* and *Harris*. The officers recognized this as a civil dispute and encouraged both sides to contact an attorney. Plaintiffs may not have liked or agreed with the options, including arrest, presented to them by police, but the actions of the STPD officers did not rise to the level of a Fourth Amendment violation. Existing precedent cannot be said to have "placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at —, 131 S.Ct. at 2083.

### 2. Due Process

Plaintiffs assert a violation of their due process rights against the STPD officers, but they have failed to delineate what process was due or how STPD officers violated those rights. Moreover, to the extent that such nebulous due process rights are coextensive with Plaintiffs' Fourth Amendment rights, the STPD officers did not violate "clearly established" law and are entitled to qualified immunity.

### B.     Liability of the City of South Tucson

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dept. of Soc. Services of New York*, 436 U.S. 658,

694-95, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978). Moreover, "'bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss are not entitled to an assumption of truth." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, – U.S. –, 129 S.Ct. at 1951). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (citing *Iqbal*, 129 S.Ct. at 1949). Plaintiffs' allegations against the City of South Tucson are without *any* factual content to support a finding of systemic policies in violation of constitutional rights, and are "just the sort of conclusory allegation[s] that the *Iqbal* Court deemed inadequate." *Moss*, 572 F.3d at 970 (finding allegations of systemic viewpoint discrimination at the highest levels of the Secret Service without any factual support similarly inadequate).

The City of South Tucson has a written policy regarding civil matters which states, in relevant part:

> When a member of this Department receives a complaint which is considered a civil matter, with the exception of civil court orders, it is to be referred to the complainant's private attorney. The complainant may be referred to the Lawyer's Referral Service of the Pima County Bar Association or the Legal Aid Society, if necessary. Complaints of a civil nature are not to be referred to the County Attorney's Office unless they involve consumer fraud.

Pls.' Response (Doc. 88) at 12. Plaintiffs' counsel acknowledged at oral argument that the City of South Tucson's policy to decline to intervene in civil disputes is not violative of a clearly established constitutional right. Plaintiffs take umbrage, however, with the

way that the policy was applied as to them during a landlord-tenant dispute.  Such a position is insufficient to subject the City of South Tucson to liability under *Monell*.  As such, summary judgment in favor of the City of South Tucson shall be granted.

### C.    *Constitutional Claims Against Private Defendants*

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right.  *Patel v. Kent School Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).  To state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S.Ct. 598, 604-05, 607, 46 L.Ed.2d 561 (1976).  As an initial matter, Defendants Yolanda Loya, Joseph Mason and Fernando Loya assert that if the Court grants Defendants City of South Tucson and its Officers' Motion for Summary Judgment (Doc. 72), it must also grant their motion as Plaintiffs' claims against the private defendants are derivative.  In light of the discussion that follows, the Court does not address this issue.

### 1.  State Action Requirement

"[M]ost rights secured by the Constitution are protected only against infringement by governments."  *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978) (citations omitted).  The Fourteenth Amendment of the United States Constitution provides in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.  "Because the Amendment is directed at the States, it can be violated only by conduct that may be characterized as 'state action.'" *Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982).  Similarly, Section 1983, 42 U.S.C., provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *Lugar*, 457 U.S. at 928, 102 S.Ct. at 2749 (quoting *United States v. Price*, 383 U.S. 787, 794 n.7, 86 S.Ct. 1152, 1157 n.7, 16 L.Ed.2d 267 (1966)); *see also Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999) (citations omitted) ("[Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong.").  Accordingly, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753.

The Supreme Court of the United States has delineated a two-part approach to determining whether conduct is "fairly attributable to the State."  *Id.*  "First, the

deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.*, 457 at 937, 102 S.Ct. at 2754. As such, "[a]ction by a private party . . . without something more, [is] not sufficient to justify a characterization of that party as a 'state actor.'" *Id.*, 457 at 939, 102 S.Ct. at 2754; *see also Sutton*, 192 F.3d at 835. "[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.*, 531 U.S. 288, 295, 121 S.Ct. 924, 930, 148 L.Ed.2d 807 (2001) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)); *see also George v. Edholm*, 752 F.3d 1206, 1215 (9th Cir. 2014). "Courts have used four different factors or tests to identify what constitutes 'something more': (1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus." *Sutton*, 192 F.3d at 835-36 (citations omitted). Ultimately, "[u]nder any formula, . . . the inquiry into whether private conduct is fairly attributable to the state must be determined based on the circumstances of each case." *Id.* at 836 (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999)).

Here, Plaintiffs rely on *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983) to suggest that the private Defendants Loya and Mason were actually state actors. *See* Pls.' Response (Doc. 88) at 9–11. The Ninth Circuit Court of Appeals in *Howerton* emphasized a totality of the circumstances test to determine whether private landlords

could be state actors for purposes of § 1983. *Howerton*, 708 F.3d at 384. There, police officers were present and active participants in the eviction process. *Id.* The *Howerton* court found that the landlords "deliberately used the police to carry out the challenged eviction." *Id.* In the instant case, Defendants Loya and Mason did not rely on police authority to carry out the eviction. Defendant Fernando Loya changed the locks on the 20 West 35th Street property without police assistance or support. Furthermore, although the police were called on multiple occasions regarding the ongoing dispute between Plaintiffs and Defendants Loya and Mason, this was done by both parties, not merely the private Defendants seeking to utilize the police power for their benefit. As such, Defendants Loya and Mason were not state actors for purposes of § 1983. Accordingly, partial summary judgment shall be granted in favor of Defendants Loya and Mason.

### 2.  Defendants Yolanda Loya and Joseph Mason

For purposes of this motion, the Court accepts Plaintiffs' claims that Yolanda Loya held herself out to be an FBI agent and her husband as retired federal law enforcement. The record is devoid of evidence indicating that beyond her mere statement, she was acting as a federal agent. Even if, however, the Court accepts Plaintiffs' contention that Defendant Yolanda Loya was cloaking herself in the federal authority and thereby acting as a government agent, Section 1983, 42 U.S.C., is the improper vehicle for bringing a claim. In such a case, Plaintiffs are required to bring a *Bivens* action, which they have not alleged here. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing

1   claim for damages against federal agents for violations of plaintiff's Fourth Amendment

2   rights).

3            **3. Attorneys' Fees**

4

5            Defendants Loya and Mason seek attorneys' fees pursuant to 42 U.S.C.§ 1988.

6   Section 1988 provides that in any action brought pursuant to § 1983, "the court, in its

7   discretion, may allow the prevailing party, other than the United States, a reasonable

8   attorney's fee as part of the costs[.]"   42 U.S.C. § 1988(b).   "[A] prevailing defendant

9   should not routinely be awarded attorneys' fees simply because he has succeeded, but

10  rather only where the action is found to be 'unreasonable, frivolous, meritless, or

11  vexation.'"   *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994) (citations

12  omitted).   As such, "the mere fact that a defendant prevails does not automatically

13  support an award of fees."   *Id.*   Plaintiffs' § 1983 claims against Defendants Loya and

14  Mason were brought in conjunction with similar claims against the City of South Tucson

15  and its officers, as well as state law claims against the private defendants.   Moreover,

16  Defendants decided not to file a motion to dismiss, but rather conducted sufficient

17  discovery to support a motion for partial summary judgment.   On this record, the Court

18  declines to characterize Plaintiffs claims as unreasonable, frivolous, or vexatious.   As

19  such, a fee award is inappropriate in the instant case.

20

21

22  **IV.    CONCLUSION**

23

24            For the reasons discussed, *supra*, Defendant City of South Tucson and its Officers'

25  Motion for Summary Judgment (Doc. 72) and Defendants Yolanda Loya, Joseph Mason

26

27

28

and Fernando Loya's Motion for Partial Summary Judgment (Doc. 74) should be GRANTED.

Additionally, because granting Defendants Loya and Mason's motion for partial summary judgment will result in resolving all pending federal claims, and there is no diversity jurisdiction, the matter should be dismissed in its entirety and remanded to the state court for further adjudication.

## V.    RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

1)      GRANTING Defendant City of South Tucson and its Officers' Motion for Summary Judgment (Doc. 72);

2)      GRANTING Defendants Yolanda Loya, Joseph Mason and Fernando Loya's Motion for Partial Summary Judgment (Doc. 74);

3)      DENYING Defendants Yolanda Loya, Joseph Mason and Fernando Loya's request for attorneys' fees; and

4)      REMANDING the case to the Pima County Superior Court (Cause Number C20144790).

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.

R. Civ. P. 72(b)(2).  If objections are not timely filed, they may be deemed waived.  If objections are filed, the parties should use the following case number: **CV-14-02386-TUC-RM**.

Dated this 26th day of January, 2016.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge